## Kenyon Estate

*High, Swartz, Roberts & Seidel,* for accountant.
*Henry Stuckert Miller,* guardian ad litem.

Taxis, P. J., February 6, 1967.—The reason or purpose of the filing of the account is the fact that trustee has, pursuant to paragraph sixth of the will of decedent, consumed all of the principal by payments to the life tenant, Roberta Kenyon Coats, and seeks confirmation thereof, and confirmation of the administration of this trust.

The account shows a net balance of principal and income for distribution of $429.09, composed of cash.

The estate having been marked insolvent for transfer inheritance tax purposes, there is no transfer inheritance tax due the Commonwealth.

Robert W. Kenyon, testator, died on March 22, 1935. In clause fourth of his will, he left his residuary estate in trust for his widow. In clause sixth, he provided that upon his widow's death (which event has occurred), the principal be divided into two equal parts and held in further trust one part for decedent's daughter Mildred and the second part for decedent's daughter Roberta, income to be paid to the respective daughter for her life and the principal to be paid upon said daughter's death to her issue.

With regard to invasion of principal during the lifetime of each respective daughter, testator authorized trustee to pay out 10 percent upon said daughter attaining the age of 25 years (which event has occurred), and: "Moreover should the income of the fund be, in the judgment of the said Trustee, by reason of long illness *or other extraordinary event or circumstances, inadequate for the comfortable maintenance and support* of my said daughter, then my said Trustee shall have the right to make use of a portion or portions of the principal of the said trust fund, *even though the fund be in this way exhausted, and without any liability for so doing*".

The present account concerns only the trust for the daughter, Roberta, now, Roberta Kenyon Coats.

Page 7 of the account shows two principal distributions on January 25 and February 9, 1966, to Mrs. Coats totalling $9,100. The payment of these two principal distributions effectually and for all intents and purposes terminates this trust in fact. At the time of audit, a copy of a letter from Mrs. Coats to trustee dated January 24, 1966, refers to an accident which occurred on January 8, 1966, when an Air Force "flying boxcar", a C-119, crashed on the Coats property at or near Scranton, completely destroying their home, their furnishings, their clothes, and killing their eldest son, Robert. As a result of this devastation and of the Coats' resulting destitution, trustee on the next day paid Mrs. Coats, out of principal, the sum of $3,-500, and on February 9, 1966, a further sum of $5,600, for a total of $9,100. The question before the court is whether, in the circumstances as outlined and as supported by the testimony of Mrs. Coats, the incident of January 8, 1966, would fall within the description in the will of an "extraordinary event"; stated another way, whether trustee has abused its discretion in depleting this trust to the point of exhaustion pursuant to this power.

On this particular question there is no disagreement, for the guardian ad litem and trustee ad litem admits that the incident described above was in fact an "extraordinary event". The court finds as a fact that the catastrophe which befell the Coats household on January 8, 1966, was indeed an "extraordinary event" within the language of this will, and that in these circumstances, trustee did not abuse its discretion in payment of principal totalling $9,100, as set forth in the account. Cf. Baker Trust, 5 Fiduc. Rep. 431, and cases therein cited.

The guardian and trustee ad litem, however, does raise another question. Stated briefly, the guardian takes the position that payments of principal to the

life tenant totalling $9,100 should be considered as an advance or loan, for the reason that the Coats family has a substantial claim for damages and that, upon effecting a settlement with the Federal Government concerning the various claims outstanding, the life tenant should return to the trust the $9,100 advanced by the trust, except, of course, any amount recovered by or for the estate of the deceased son Robert as damages for his death..

There is no merit to the position taken by the guardian ad litem. The answer is found in a reading of paragraph sixth of testator's will. Testator expressly empowered trustee, in its discretion, to terminate this trust by payments of principal to the life tenant ". . . even though the fund be in this way exhausted. . . ." The clear meaning of this important phrase, as used by testator, is that, upon the happening of an "extraordinary event or circumstance" (which event has occurred), trustee was empowered to terminate this trust by paying all of the principal to the life tenant. Not a word is said, nor is there the slightest implication that trustee is required to consider the fact that the life tenant may, in the future, receive funds in settlement from the Federal Government. In fact, the final phrase used by testator, ". . . and without any liability for so doing", negatives such requirement.

Finding no abuse of discretion and after an examination of the will of this decedent, the court concludes that there is no responsibility on the part of trustee or the life tenant to consider this as a loan; that, upon any settlement made with the Federal Government concerning the claims therein set forth, there is no responsibility on the part of the life tenant to reimburse this trust for principal advanced. . . .

And now, February 6, 1967, this adjudication is confirmed nisi.